1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

### EASTERN DISTRICT OF CALIFORNIA

10

11   ROBERT JOSEPH REEDOM,

12          Plaintiff,

13      v.

14   COMMISSIONER OF SOCIAL SECURITY,

15          Defendant.

16
17
18

Case No.  1:21-cv-01645-SAB

ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

(ECF Nos. 15, 16, 17)

19                                         **I.**

20                              **INTRODUCTION**

21        Plaintiff Robert Joseph Reedom ("Plaintiff") seeks judicial review of a final decision of

22   the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application

23   for Social Security benefits pursuant to Title XVI of the Social Security Act.  Defendant has filed

24   a cross-motion for summary judgment and opposition to Plaintiff's appeal.   The matters are

25   currently before the Court on the parties' briefs, which were submitted without oral argument, to

26   Magistrate Judge Stanley A. Boone.[1]  For the reasons set forth below, Plaintiff's appeal shall be

27

28   ───────────────────────

[1]   The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been
assigned to Magistrate Judge Stanley A. Boone for all purposes.  (ECF Nos. 8, 9, 10.)

1    denied and Defendant's cross-motion for summary judgment shall be granted.

2    **II.**

3    **BACKGROUND**[2]

4        On September 28, 2018, Plaintiff filed an application for Supplemental Security Income

5    ("SSI") under Title XVI, alleging disability beginning November 1, 2003.[3]  (Admin. Rec. ("AR")

6    261–62, ECF No. 12-1.)

7        Plaintiff's claim was initially denied on June 25, 2019, and denied upon reconsideration

8    on September 25, 2019.   (AR 125–29, 133–38.)   On August 4, 2020, Plaintiff appeared

9    telephonically for hearing, but the Administrative Law Judge William G. Reamon (the "ALJ")

10    continued the hearing in order to permit Plaintiff to retain counsel.  (AR 32–49.)  On March 24,

11    2021, Plaintiff, represented by counsel,[4] appeared via telephonic conference for an administrative

12    hearing before the ALJ.  (AR 50–85.)  Vocational expert ("VE") Susan Rowe also testified at the

13    hearing.   On April 19, 2021, the ALJ issued a decision denying benefits.   (AR 12–31.)   On

14    September 16, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's

15    decision the final decision of the Commissioner.  (AR 1–6.)

16        Plaintiff initiated this action in federal court on November 22, 2021, and seeks judicial

17    review of the denial of his application for benefits.  (ECF No. 1.)  The Commissioner lodged the

18    administrative record on April 5, 2022.  (ECF No. 12.)  On July 19, 2022, Plaintiff filed an

19    opening brief.   (ECF No. 15.)   On September 1, 2022, Defendant filed a cross-motion for

20    summary judgment and opposition to Plaintiff's brief.  (ECF No. 16.)  On September 16, 2022,

21    Plaintiff filed a reply.  (ECF No. 17.)  The matter is deemed submitted.

22
23    [2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the
Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the
parties' briefings by their ECF pagination.

24
25    [3] While Plaintiff's complete medical history (*i.e.*, records of a claimant's medical sources covering at least the 12
months preceding the month in which an application is filed) must be considered for purposes of his application, 20
C.F.R. § 416.912, the Court notes that SSI benefits are not payable prior to the month following the month in which
26    the application was filed, 20 C.F.R. § 416.335, and therefore the ALJ's disability determination is whether Plaintiff
was under a disability as of the date the application was filed.

27    [4] Plaintiff was represented by attorneys Jonathan O. Pena and Nicolas Martinez for the administrative proceedings.
Mr. Martinez appeared at the March 24, 2021 hearing, and Mr. Pena has appeared for Plaintiff in the instant matter.
28    (See AR 15; ECF No. 15.)

2

**III.**

**LEGAL STANDARD**

A.      **The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[5] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[6] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is

---

[5] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[6] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only SSI benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes the cases and regulations cited herein are applicable to the instant matter.

on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once he has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[7]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC).  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or call a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

///

---

[7] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1          **B.      Standard of Review**

2          Congress has provided that an individual may obtain judicial review of any final decision

3   of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

4   determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by

5   the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

6   Further, the Court's review of the Commissioner's decision is a limited one; the Court must find

7   the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. §

8   405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant

9   evidence which, considering the record as a whole, a reasonable person might accept as adequate

10  to support a conclusion."   Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002)

11  (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also

12  Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to

13  the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary sufficiency is

14  not high."   Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a

15  scintilla, but less than a preponderance; it is an extremely deferential standard."   Thomas v.

16  CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and

17  citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the

18  ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout,

19  454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally

20  falls upon the party attacking the agency's determination."   Shinseki v. Sanders, 556 U.S. 396,

21  409 (2009).

22         Finally, "a reviewing court must consider the entire record as a whole and may not affirm

23  simply by isolating a specific quantum of supporting evidence."   Hill v. Astrue, 698 F.3d 1153,

24  1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

25  Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may

26  review only the reasons stated by the ALJ in his decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th

27  Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not

28  this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

1  for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is

2  the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart,

3  400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

6      The ALJ conducted the five-step disability analysis and made the following findings of

7  fact and conclusions of law as of the date of the decision, April 19, 2021 (AR 17–25):

8      At step one, the ALJ determined Plaintiff has not engaged in substantial gainful activity

9  since September 28, 2018, the application date.  (20 C.F.R. §§ 416.971 *et seq*.)

10     At step two, the ALJ determined Plaintiff has the following severe impairments:

11  depression, learning disorder, intellectual disorder, and attention deficit hyperactivity disorder

12  ("ADHD").  (20 C.F.R. § 416.920(c).)

13     At step three, the ALJ determined Plaintiff does not have an impairment or combination of

14  impairments that meets or medically equals the severity of one of the listed impairments in 20

15  C.F.R. Part 404, Subpart P, Appendix 1.  (20 C.F.R. §§ 416.920(d), 416.925, 416.926.)

16     Before proceeding to step four, the ALJ determined Plaintiff has the RFC to perform a full

17  range of work at all exertional levels, but with the following non-exertional limitations:

> **[Plaintiff] can perform work involving the remembering,
> understanding, and carrying out of simple, routine, repetitive
> tasks in a timely fashion.   [He] can tolerate occasional
> interactions with the general public, and is able to adapt to
> simple workspace changes.  He would work best in a workplace
> with well-defined workplace tasks.**

22  (AR 20 (citing 20 C.F.R. §§ 416.920c, 416.929, and SSR 16-3p, available at 2017 WL 5180304

23  (Oct. 25, 2017)) (emphasis in original).)

24     At step four, the ALJ found Plaintiff has no past relevant work.  (AR 24 (citing 20 C.F.R.

25  § 416.965).)

26     At step five, the ALJ noted Plaintiff was born on August 28, 1998, and was 20 years old,

27  which is defined as a younger individual age 18–49, on the date the application was filed (20

28  C.F.R. § 416.963); Plaintiff has a limited education (20 C.F.R. § 416.964); and transferability of

job skills is not an issue because Plaintiff does not have past relevant work (20 C.F.R. § 416.968). (AR 24.)  Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (20 C.F.R. §§ 416.969, 416.969(a)), such as:

- Production Helper (Dictionary of Occupational Titles ("DOT") 691.687-010), a medium unskilled (SVP 2) occupation with approximately 75,000 jobs in the national economy;

- Laundry Worker (DOT 581.686-018), a medium unskilled (SVP 2) occupation with approximately 110,000 jobs in the national economy; and

- Dishwasher (DOT 318.687-010), a medium unskilled (SVP 2) occupation with approximately 200,000 jobs in the national economy.

(AR 24–25.)  With respect to the identified jobs, the ALJ noted the VE's testimony was consistent with the DOT.  (AR 25.)

Therefore, the ALJ found Plaintiff was not under a disability as defined in the Social Security Act, since September 28, 2018, the date the application was filed.  (Id. (citing 20 C.F.R. § 416.920(g).)

**V.**

**DISCUSSION**

Plaintiff raises two issues on appeal: (1) the ALJ "failed to properly evaluate Plaintiff's impairments at Step Three, because he failed to consider evidence that Plaintiff meets or medically equals the listings for mental disorders, and disregarded evidence of marked limitations in functioning"; and (2) the ALJ "failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer clear and convincing reasons for rejecting Plaintiff's subjective complaints."  (ECF No. 15 at 1.)  The Court shall address each argument in turn.

**A.    Evaluation of the Listings at Step Three**

As previously noted, the ALJ considered whether Plaintiff has an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1—specifically considering Listings

12.04 (depressive, bipolar and related disorders), 12.05 (intellectual disorder) and 12.11 (neurodevelopmental disorders)—and determined that Plaintiff does not have any such impairment or combination of impairments to meet or medically equal a listing.  (AR 17–19.)  Plaintiff does not challenge the ALJ's step three determination as pertaining to Listings 12.05 or 12.11, but only challenges the ALJ's determination with respect to Listing 12.04.  (ECF No. 15 at 10–13.)  Specifically, Plaintiff challenges the Listing 12.04 findings as they pertain to depressive disorders.  (Id. at 11.)

> 1.   Listing 12.04

Listing 12.04 encompasses depressive, bipolar and related disorders and has three paragraphs, A, B, and C.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Paragraph A sets forth the medical criteria that must be present in a claimant's medical evidence in order to meet or equal a listing regarding either depressive disorder or bipolar disorder.  With respect to depressive disorders, a claimant must produce medical documentation of five or more of the following criteria: (1) depressed mood; (2) diminished interest in almost all activities; (3) appetite disturbance with change in weight; (4) sleep disturbance; (5) observable psychomotor agitation or retardation; (6) decreased energy; (7) feelings of guilt or worthlessness; (8) difficulty concentrating or thinking; or (9) thoughts of death or suicide.  Id.

The paragraph B criteria represents the four general areas of functioning in the work setting: (1) understand, remember or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  Id.  The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme."  Id.  To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning.  Id.  An "extreme" limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.[8]  See 20 C.F.R. §§ 404.1520a, 416.920a (describing ALJ's

---

[8] In addition, a "moderate" degree of mental limitation means that functioning in this area independently,

8

1   special technique for evaluating paragraph B criteria).

2        Paragraph C requires a claimant demonstrate his mental disorder is "serious and

3   persistent," meaning that there is a medically documented history of the existence of the disorder

4   over a period of at least 2 years, as well as evidence that the claimant relies, "on an ongoing basis,

5   upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured

6   setting(s), to diminish the symptoms and signs of [the] mental disorder" and that, despite such

7   diminished symptoms and signs, the claimant has achieved only marginal adjustment.  20 C.F.R.

8   § Pt. 404, Subpt. P, App. 1.  The Appendix defines "marginal adjustment" as follows:

> that your [the claimant's] adaptation to the requirements of daily
> life is fragile; that is, you have minimal capacity to adapt to changes
> in your environment or to demands that are not already part of your
> daily life. We will consider that you have achieved only marginal
> adjustment when the evidence shows that changes or increased
> demands have led to exacerbation of your symptoms and signs and
> to deterioration in your functioning; for example, you have become
> unable to function outside of your home or a more restrictive
> setting, without substantial psychosocial supports (see 12.00D).
> Such deterioration may have necessitated a significant change in
> medication or other treatment. Similarly, because of the nature of
> your mental disorder, evidence may document episodes of
> deterioration that have required you to be hospitalized or absent
> from work, making it difficult for you to sustain work activity over
> time.

17   Id.

18        To establish a disorder under Listing 12.04, a claimant must either satisfy the

19   requirements of paragraphs A and B; or he must satisfy the requirements of paragraphs A and C.

20   Id.  Plaintiff does not discuss the paragraph C criteria; therefore, the Court concludes his

21   challenge to the ALJ's decision is based on purportedly meeting or medically equaling the listing

22   requirements under paragraphs A and B.

23       2.    The ALJ's Decision

24        At step three, the ALJ determined that Plaintiff does not have an impairment or

25   combination of impairments that meets or medically equals the criteria of Listing 12.04

26

27   appropriately, effectively, and on a sustained basis is "fair."  20 C.F.R. §§ 404, Subpt. P, Appx. 1, 12.00.F.2.c,
    12.00F.2.d (emphasis added); see also, e.g., Sandoval v. Berryhill, CIV 17-0641 JHR, 2018 WL 3429920 (D.N.M.

28   Jul. 16, 2018), at *7 (noting only "marked" impairment prevents any interaction; whereas limitation of "moderate to
    marked" denotes "abilities in these areas are limited, [but] they are not completely absent.").

(depressive, bipolar and related disorders).

First, the ALJ applied the special technique for evaluating the severity of mental impairments by rating Plaintiff's level of impairment in the four functional areas under paragraph B (the "paragraph B criteria"), and found Plaintiff did not meet the paragraph B criteria because his mental impairments do not result in at least one extreme or two marked limitations out of the four broad areas of functioning.  (AR 17.)  More specifically:

(1) The ALJ found Plaintiff has a "moderate" limitation in "understanding, remembering, or applying information," based on Plaintiff's mental status examinations and his ability to function independently with activities of daily living ("ADLs"), including taking his medications with some reminders and attending medical appointments, plans of an upcoming driver's license. The ALJ also noted Plaintiff was able to follow the examiner's instructions to perform mental capacity testing and intellectual testing without issue.  (AR 18 (citing AR 457–65).)

(2) The ALJ found Plaintiff has a "moderate" limitation in the ability to "interact with others" because, while Plaintiff reported he lives an isolative lifestyle at times and has difficulty getting along with others due to irritability and anger issues, the record also reflects he was previously in a relationship, now lives with his grandfather, is able to grocery shop, and interacts appropriately with medical professionals.  (Id.)

(3) The ALJ found Plaintiff has a "moderate" limitation in "concentrating, persisting, and maintaining pace" because, on the one hand, Plaintiff reported motivation issues and that he often does not engage in much activity; however, the ALJ noted Plaintiff also demonstrates his ability in this domain by playing video games, watching television, and searching for employment online; further, Plaintiff is able to prepare meals, grocery shop, and perform simple and routine tasks on a daily basis.  (Id.)

(4) Finally, the ALJ found Plaintiff has a "mild" limitation in "adapting or managing oneself" because Plaintiff cares for himself, is able to attend to his personal care, prepare meals, attend his mental health appointments, and shop for groceries and necessities.  (Id. (citing AR 58–79).)

Next, the ALJ considered whether the "paragraph C" criteria were satisfied, and

1   determined that they were not.   (Id.)   The ALJ reached this conclusion after determining

2   Plaintiff's medical record does not include any evidence that his mental impairments required

3   medical treatment, mental health therapy, psychosocial supports, or a highly structured setting

4   that is ongoing and that diminishes the symptoms of the mental disorder, and that resulted in only

5   marginal adjustment or minimal capacity to adapt to changes in the environment or to demands

6   that are not already part of his daily life.[9]   (AR 18.)

7           3.   Legal Standard

8           If a claimant has an impairment or combination of impairments that meets or equals a

9   condition outlined in the "Listing of Impairments," then the claimant is presumed disabled at step

10   three.  20 C.F.R. § 404.1520(d).  An ALJ must evaluate the relevant evidence before concluding

11   that a claimant's impairments do not meet or equal a listed impairment.  If a claimant has more

12   than one impairment, the Commissioner must determine "whether the combination of [the]

13   impairments is medically equal to any listed impairment." 20 C.F.R. § 404.1526(a).   The

14   claimant's symptoms "must be considered in combination and must not be fragmentized in

15   evaluating their effects."  Lester v. Chater, 81 F.3d 821, 829 (9th Cir. 1995), as amended (Apr. 9,

16   1996) (citations omitted).  A finding of equivalence must be based on medical evidence only.  20

17   C.F.R. § 404.1529(d)(3).  A boilerplate finding that a claimant does not meet or medically equal a

18   listed impairment is insufficient.  See Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir.

19   1990) (holding that ALJ erred by failing to consider evidence of equivalence).  However, an ALJ

20   is not required to discuss the combined effects of a claimant's impairments or compare them to

21   any listing in an equivalency determination, unless the claimant presents evidence in an effort to

22   establish equivalence.  Id. (citing Lewis, 236 F.3d at 514 (distinguishing Marcia v. Sullivan and

23   finding the ALJ's failure to consider equivalence was not reversible error because the claimant

24   did not offer any theory, plausible or otherwise, as to how his impairments combined to equal a

25   _____

26   [9] The Court notes that, regarding Listing 12.05, the ALJ additionally determined Plaintiff does not meet the
paragraph A requirements because Plaintiff was able to complete intellectual testing at the consultative examination
with results considered valid.  (AR 18–19 (citing AR 457–65).)  In addition, the ALJ noted Plaintiff consistently

27   expressed to his psychiatrist that his auditory and visual hallucinations are well-controlled with medications, he
exhibits a good mood, is able to concentrate, and he does not feel hopeless or helpless.  (AR 19.)  While Plaintiff
does not challenge the ALJ's findings and step three determination with respect to Listing 12.05, the ALJ's findings

28   based on this medical evidence may also be relevant to his evaluation of the other listings.

1    listing impairment)).

2          Importantly, it is the claimant that bears the burden of proving that he has an impairment

3    that meets or medically equals the criteria of a listing.  Burch, 400 F.3d at 683.  The Supreme

4    Court has held that, "[f]or a claimant to qualify for benefits by showing that his unlisted

5    impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must

6    present medical findings equal in severity to all the criteria for the one most similar listed

7    impairment."  Sullivan v. Zebley (Zebley), 493 U.S. 521, 531 (1989) (citing 20 C.F.R. §

8    416.926(a)).  "A claimant cannot qualify for benefits under the 'equivalence' step by showing

9    that the overall functional impact of his unlisted impairment or combination of impairments is as

10   severe as that of a listed impairment."  Id.  The Ninth Circuit explains this is because "listed

11   impairments are purposefully set at a high level of severity because the listings were designed to

12   operate as a presumption of disability that makes further inquiry unnecessary."  Kennedy v.

13   Colvin, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting Zebley, 493 U.S. at 532) (internal

14   quotations omitted).  That is, "[w]hen a claimant meets or equals a listing, he is presumed unable

15   to work and is awarded benefits without a determination whether he actually can perform his own

16   prior work or other work."  Id.; see also Lester, 81 F.3d at 828 (explaining disability is

17   "irrebuttably presumed" at step three if the claimant meets or equals a Listing because of the

18   extreme severity of the conditions contained in the "Listing of Impairments").

19          4.    Analysis

20          Based on the foregoing authorities, the Court finds Plaintiff has not met his burden to

21   establish an impairment or combination of medical impairments that meets or is medically

22   equivalent (under the paragraph A criteria) to Listing 12.04, and his arguments pertaining nearly

23   exclusively to the paragraph B criteria are unavailing.

24          a.    **Paragraph A Criteria**

25          As to the paragraph A criteria, Plaintiff asserts he meets the listing because his depressive

26   disorder is medically documented.  Plaintiff next contends the ALJ does not dispute that there is

27   evidence of a medically documented depressive disorder as defined in the Listings.  (ECF No. 15

28   at 11.)  It appears Plaintiff deems the ALJ's purported failure to establish a lack of paragraph A

criteria as a waiver of the issue, as he does not discuss paragraph A any further.  The Court finds Plaintiff's argument unavailing as follows.

First, Plaintiff's contention that he meets the paragraph A criteria is conclusory.  As noted *supra*, establishing medical equivalence with the listings is an extremely high burden that must be predicated on substantial medical evidence "equal in severity" to "each of the individual criteria" under the subject listing, and not merely "a showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." Kennedy, 738 F.3d at 1175–76, 1178; Zebley, 493 U.S. at 532.  The Ninth Circuit provides a strong example of this distinction, as it pertained to Listing 12.05, in Kennedy v. Colvin.  In Kennedy, the court explained that Listing 12.05C is based on a combination of an IQ score with an additional and significant mental or physical impairment; it therefore rejected the claimant's argument that his physical impairments related to sickle cell anemia compensated for his failure to meet the IQ requirement, and affirmed the ALJ's step three findings because the claimant had failed to demonstrate that either his IQ score or his intellectual functioning was effectively lower than the recorded score because of other impairments.   Kennedy, 738 F.3d at 1177.  Here, similarly, Plaintiff does not explain or argue how the combination of his learning disorder, intellectual disorder and/or ADHD amount to a medical equivalent of the depressive disorder criteria (such as, *e.g.*, depressed mood, diminished interest in almost all activities, appetite disturbance with change in weight, or thoughts of death or suicide) of Listing 12.04.

Furthermore, paragraph A for Listing 12.04 requires medical evidence of at least five of nine specific criteria, but Plaintiff has not identified any argument or evidence in support of his assertion that he meets or medically equals the paragraph A criteria; indeed, Plaintiff has not identified which of the five (or more) paragraph A criteria he claims to meet.  See Greenwood v. F.A.A., 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim.").  Instead, Plaintiff relies solely on his paragraph B arguments, which may address the overall functional impact of his impairments, but does not directly address the paragraph A criteria.  Id.  At most, Plaintiff states, in purely conclusory fashion, that "there is evidence of a medically documented depressive disorder as defined in the

1    Listings."  (ECF No. 15 at 11.)  Defendant speculates Plaintiff is referring to a diagnosis of

2    depression (see ECF No. 16 at 5), though this is not apparent to the Court from Plaintiff's

3    briefings.  As the Ninth Circuit commented in Kennedy, Plaintiff's "arguments would be relevant

4    at the fourth and fifth steps of the disability evaluation, but not at the third step, where equaling a

5    listing serves as a presumption of disability and automatically ends the inquiry."  Id. (also noting,

6    as here, the claimant did not challenge the ALJ's fourth and fifth step findings as issues on

7    appeal).

8          Plaintiff's attempt to shift the burden of proof to the ALJ at step three by arguing the ALJ

9    conceded Plaintiff meets the paragraph A criteria because he did not expressly prove otherwise

10   also fails.  First, the legal authority is clear that the claimant bears the burden of proving he has an

11   impairment that meets or medically equals the criteria of a listing at step three.  Burch, 400 F.3d

12   at 683.  Thus, even in support of his argument that the ALJ did not adequately discuss the

13   evidence supporting his equivalency findings, Plaintiff was required to identify the evidence of

14   record supporting his argument to the contrary in order to demonstrate he had met his burden.

15   Second, while Plaintiff is correct that the ALJ does not expressly state Plaintiff failed to meet the

16   paragraph A criteria for Listing 12.04 (at page 5 of his decision (see AR 18)), the ALJ did

17   determine that Plaintiff did not meet or medically equal Listing 12.04 (which is inclusive of the

18   paragraph A criteria), and the ALJ's decision is replete with discussion of the medical evidence

19   that supports this conclusion.  (See AR 20–24.)  As the Ninth Circuit has explained, an ALJ is

20   merely required to discuss and evaluate the evidence that supports his conclusion; he is not

21   required to do so under specific headings.  Kennedy, 738 F.3d at 1178 (rejecting similar argument

22   by claimant that the ALJ inadequately addressed his evidence of equivalency to the listing).

23          Here, for example (and as discussed in greater detail with respect to Plaintiff's subjective

24   testimony arguments), the ALJ considered the medical opinions of the physicians—none of

25   whom opined that Plaintiff satisfied the paragraph A (or B) criteria—and accorded greater weight

26   to findings that Plaintiff did not demonstrate limitations or symptoms related to the paragraph A

27   criteria as consistent with and supported by the medical record.  (See AR 21, 23–24 (discussing

28   Drs. Blase, Collado and Portnoff's opinions).)  Notably, Plaintiff has not challenged the ALJ's

evaluation of the medical opinion evidence (thereby waiving this particular issue).  Lewis, 236 F.3d at 517 n.13; see also Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) (stating court "will not consider any claims that were not actually argued in appellant's opening brief" and will only "review … issues which are argued specifically and distinctly in a party's opening brief.").  The ALJ also considered Plaintiff's treatment notes—which included reports of improvement with good moods, good energy, and an overall improvement in psychiatric symptoms (AR 20–21 (citing AR 836, 845)), appointments during which Plaintiff denied mental health symptoms, including feeling down, depressed and hopeless, and denied having little interest or pleasure in doing things (AR 21 (citing AR 444, 467, 484, 489, 844, 850, 854, 864)), and noted Plaintiff's own testimony of living with his girlfriend, (previously) playing high school football, and (currently) enjoying playing video games (AR 18, 22–23 (citing AR 76)).  This evidence also demonstrates Plaintiff's impairments were not medically equivalent to the depressive disorder criteria (such as, e.g., depressed mood, diminished interest in almost all activities, appetite disturbance with change in weight, or thoughts of death or suicide) of Listing 12.04.  Plaintiff's arguments are therefore unavailing.

### b.    Paragraph B Criteria

As to the paragraph B criteria, the Court notes Plaintiff does not challenge the ALJ's findings as to his limitations in all four functional areas under the paragraph B criteria, but only the ALJ's findings that Plaintiff has a "mild" limitation with respect to the area of "adapting and managing oneself," and a "moderate" limitation with respect to the area of "understanding, remembering, or applying information."  (See ECF No. 15 at 11–13.)  Plaintiff argues the ALJ failed to evaluate the relevant evidence showing that his limitations in these two functional areas should be deemed "marked."

In support of his argument that his limitation in the functional area of adapting and managing oneself is "marked," and not "mild," Plaintiff points to treatment notes in which he was observed to have poor personal hygiene and grooming and noncompliance with medications causing an inability to manage his symptoms, and school records documenting accommodations Plaintiff was given and incidents in which Plaintiff was "defiant, refused to do work, cursed at

staff members, was confrontational, made sexually inappropriate comments or threats, and used profanity."  Plaintiff argues these records contradict the ALJ's findings that Plaintiff is able to care for himself, attend to personal care, and take medications in order to manage his mental health.  (Id. at 11–12.)

In support of his argument that his limitation in the functional area of understanding, remembering, or applying information is "marked," and not "moderate," Plaintiff argues the ALJ's consideration of his testimony that he intended to take (as distinguished from taking and passing) the driver's license examination is not evidence of the ability to understand and apply information.  Plaintiff also points to his testimony that he is not able to complete a job application without assistance from someone else to read and answer the questions, and that he struggled for days to learn simple work tasks; school records of accommodations including clarified instructions and checks for understanding; Dr. Portnoff's note that Plaintiff has a "markedly impaired" immediate memory; and Dr. Ahuja's observation that Plaintiff is a "poor historian" in support of his contention that he has a marked limitation in this functional area.  (Id. at 12–13.) The Court finds Plaintiff's arguments unavailing as follows.

As an initial matter, the Court notes Plaintiff's arguments appear merely to suggest an alternative interpretation of the evidence.  As the Court has noted, however, "[w]here the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 599 (9th Cir. 1999); Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992); Burch, 400 F.3d at 679; Shaibi v. Berryhill, 883 F.3d 1102, 1108 (9th Cir. 2017) ("As [the Court] cannot say that the ALJ's interpretation of the available evidence was not rational, the ALJ's conclusions were supported by substantial evidence.").

Here, the ALJ relied on substantial evidence from the record, as detailed *supra*, to determine Plaintiff's limitations were mild to moderate in severity.  The ALJ's determination was also based on the medical opinions of record, all of which find Plaintiff's limitations in the criteria B functional areas to range from mild to moderate.  For example, Drs. Blase and Collado opined Plaintiff's impairments resulted in mild to moderate limitations; the ALJ found these

opinions to be "largely persuasive." (AR 23.) Dr. Portnoff similarly opined Plaintiff has mild to moderate limitations in his ability to perform detailed and complex tasks, mild limitations in the ability to accept instructions from supervisors and interact with coworkers and the public, and mild limitations in the ability to work on a consistent basis without special or additional instruction. (Id.) The ALJ found Dr. Portnoff's opinion was persuasive as to these limitations. (AR 23–24.) Importantly, Plaintiff has not challenged the ALJ's evaluation of the medical opinion evidence, or the RFC determination resulting from those findings. Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash., 350 F.3d at 929.

Plaintiff's reliance on Dr. Portnoff's note regarding his "markedly impaired" immediate memory is also misplaced. As the ALJ notes in his decision, while Plaintiff's test scores under the Wechsler Memory Scale-IV ("WMS-4") test administered by Dr. Portnoff showed marked impairment with immediate memory, they demonstrated only moderate impairment in auditory, visual and delayed memory; and Plaintiff's other Wechsler testing demonstrated only mild impairment with respect to his verbal score and working memory score. (AR 21.) Further, based on his cumulative score results, Plaintiff was assessed as "mildly impaired." (Id.) Indeed, as noted, Dr. Portnoff ultimately opined the severity of Plaintiff's limitations ranged from mild to moderate.

Furthermore, for the same reasons the Court finds the ALJ did not "cherry-pick" the evidence (discussed in greater detail herein), the Court finds the ALJ considered Plaintiff's testimony and the medical notes identified by Plaintiff in his decision, and weighed these findings against the other medical and nonmedical evidence of record. For example, while the ALJ acknowledged Plaintiff's difficulties in school (which occurred prior to the filing of Plaintiff's SSI application), he also noted Plaintiff was able to pass his classes with accommodations and he played high school football. And while the ALJ considered Plaintiff's medical notes at times documenting "poor hygiene" and a disheveled appearance, the ALJ also noted these findings were largely documented during Plaintiff's periods of noncompliance, or as a result of "situational" stressors for Plaintiff. See Chesler v. Colvin, 649 Fed. App'x 631, 632 (9th Cir. 2016) (according less import to "situational" mental symptoms, which were "unlikely to persist

1   once [the claimant's] circumstances improved").   Therefore, Plaintiff's paragraph B arguments

2   are again unavailing.

3        **B.**     **Evaluation of Plaintiff's Subjective Testimony**

4        The main thrust of Plaintiff's second argument appears to be that the ALJ failed to

5   identify clear and convincing reasons for discounting Plaintiff's symptom allegations, which

6   subsequently resulted in an RFC determination that failed to account for all of Plaintiff's

7   limitations.   (See ECF No. 15 at 13–15.)

8        1.     Plaintiff's Allegations

9        Plaintiff alleges disability as a result of schizophrenia, with an alleged onset date of

10   November 1, 2003, though Plaintiff stopped working on June 10, 2017.  (AR 96–97, 296.)  He

11   was later assessed with learning disorder, depressive, bipolar disorder, intellectual disorder, and

12   ADHD, which are the impairments he currently advances on appeal.   (See AR 101–02, 117.)

13   Plaintiff alleges his impairment limits his ability to stay on task and message correctly.  (AR 307.)

14   He alleges he only sleeps and eats each day, unless he has a counseling appointment or something

15   to do, and that he bathes three times a week, cares for his hair once a week, and snacks all day.

16   (AR 308.)   Plaintiff also alleges he requires assistance in picking out clothes and must be

17   reminded to shower and to take medications; he alleges he cannot stay on task.  (AR 309, 311.)

18   He doesn't know how to cook.  (AR 309.)  He "get[s] mad if [he has] to clean," and will only do

19   house and yard work if someone is "standing right there giv[ing] directions or help."   (Id.)

20   Plaintiff indicated he can go out alone and travels via walking, riding in a car, and riding a

21   bicycle; he can shop in stores, but doesn't like to do so.  (AR 310.)  He alleges he cannot handle

22   money.  (AR 310–11.)  He likes to "stay[] in the house on the phone."  (AR 311.)  On a check-

23   the-box portion of his disability application, Plaintiff alleges difficulties with talking, memory,

24   completing tasks, concentrating, understanding, following instructions, and getting along with

25   others.  (AR 312.)  He indicates he cannot read or write.  (Id.)

26        During the March 24, 2021 administrative hearing, Plaintiff testified he currently lives

27   with his grandfather, where he helps out with chores such as cleaning up the trash outside,

28   picking up stuff inside and doing his own dishes.  (AR 58–60.)  Plaintiff can prepare his own

1   simple meals, including using the stove.  (AR 59–60, 74.)  Plaintiff testified he can change his

2   own clothes and bathe regularly on his own.  (AR 74.)  Plaintiff testified he goes grocery

3   shopping with his mother or grandfather.  (AR 77.)  Plaintiff knows how to drive but does not

4   have a driver's license but is currently taking the test on the phone.  (AR 61.)  Plaintiff testified he

5   enjoys playing video games.  (AR 76.)  Plaintiff testified he did not finish the twelfth grade in

6   high school, but appears to have received grades ranging from B- to C up to that time; Plaintiff

7   also had an IEP (individual education plan) in high school.  (AR 62–63.)  Plaintiff testified he has

8   difficulty reading and was restless and distracted in class.  (AR 63–64.)

9        Plaintiff worked for a company making furniture for a brief period of time after quitting

10   high school, but testified he had to quit that job when he moved to go and live with his

11   grandfather.  (AR 64–65.)  Plaintiff also testified he was fired for working too slowly.  (AR 67–

12   68.)  Plaintiff originally obtained the job by applying for it online, but testified that he cannot use

13   a computer.  (AR 69.)  At his job, Plaintiff needed to be given instructions on how to complete a

14   task multiple times, but after he "got used to it," he was able to do what he needed to do "with no

15   help" and no reminders.  (AR 70.)

16        Plaintiff testified he takes Seroquel to help him sleep.  (AR 73.)  He sometimes needs

17   reminders to take his medication.  (AR 74.)  Plaintiff endorsed hallucinations and depression.

18   (AR 74–76.)  He testified that he is on medications prescribed by his mental health doctors and

19   that this medication helps, but also that the hallucinations continue every day.  (AR 75–76.)  Until

20   "very recently," he smoked/used marijuana.  (AR 78.)

21        2.   The ALJ's Findings

22        The ALJ found "Plaintiff's statements concerning the intensity, persistence and limiting

23   effects of his symptoms are not entirely consistent with the medical evidence and other evidence

24   in the record" as follows:

25           In evaluating the claimant's consistency of subjective allegations
             with the evidence of the record, I first reiterate that the clinical
26           examination findings do not fully corroborate his alleged symptoms
             and limitations.  Indeed, the medical evidence suggests that the
27           claimant's symptoms have been relatively well controlled when he
             attends consistent treatment and takes his medications as
28           prescribed.  Nevertheless, the record reflects relatively infrequent

medical appointments and gaps in the claimant's history of treatment. This inconsistent treatment suggest that the claimant's symptoms may not be as limiting as he has generally alleged.

The evidence raises other questions about the claimant's consistency of subjective allegations. For instance, the claimant has described other daily activities that are not limited to the extent one would expect given his allegations of disabling symptoms. In a function report, completed by the claimant's mother, Bertha Bush, his daily activities include caring for his personal hygiene, preparing simple meals, and limited shopping (Exhibit B3E). However, the record also reflects the claimant lived with his girlfriend in the past and played high school football. At the hearing, the claimant testified to living with his grandfather, cooking simple meals, playing video games, and shopping for groceries and necessities. While the scope and extent of these regular activities may change from day to day, the claimant's ability to participate in such activities  tends to suggest that he is far more capable than alleged and undermines the reliability of his allegations of disabling functional limitations.

(AR 22–23.)

### 3. Legal Standard

The RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.945(a); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (RFC reflects current "physical and mental capabilities"); SSR 96-8p, at *2. Thus, it represents the maximum amount of work the claimant is able to perform based on all the relevant evidence in the record. See id.; see also 20 C.F.R. § 416.945(a)(3) (RFC determination must be "based on all of the relevant medical and other evidence."). As previously noted, the RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c); Vertigan, 260 F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.") (citing 20 C.F.R. § 404.1545). And where "the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); Batson, 359 F.3d at 1195.

In reviewing whether an ALJ committed error in determining the RFC, the relevant inquiry is whether the medical evidence supports the ALJ's finding. Stubbs-Danielson v. Astrue,

539 F.3d 1169, 1173–74 (9th Cir. 2008) (holding the RFC assessment adequately captures restrictions if it is consistent with the concrete limitations in the medical opinions); see also Schneider v. Comm'r, 433 Fed. Appx. 507, 509 (9th Cir. 2011) (ALJ's failure to address claimant's migraines was harmless because medical record did not support finding that migraines would affect claimant's functioning at work).  Accordingly, "[t]he ALJ's RFC determination need not precisely reflect any particular medical provider's assessment."  Althoff-Gromer v. Comm'r of Soc. Sec., No. 2:18-cv-00082-KJN, 2019 WL 1316710, at *13 (E.D. Cal. Mar. 22, 2019) (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222–23 (9th Cir. 2010)); see also Chavez v. Colvin, 654 Fed. App'x 374, 375 (10th Cir. 2016).  This is because it is within the ALJ's province to synthesize the medical evidence, resolving conflicts and ambiguities in the medical testimony, as well as determining credibility.[10]  See Lingenfelter v. Astrue, 504 F.3d 1028, 1042 (9th Cir. 2007); Andrews, 53 F.3d at 1039.

As to the credibility determination, a claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn, 495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.").

Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p, at *3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."[11]  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020)

---

[10] SSR 16-3p applies to disability applications heard by the agency on or after March 28, 2016.  Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, at *1-2.

[11] Although Defendant emphasizes disagreement with the "clear and convincing reasons" standard in order to preserve the issue for future appeals, Defendant acknowledges it is the applicable standard for weighing credibility in

1    (citations omitted).

> If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive. The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints. In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary.

Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); see also Lambert, 980 F.3d at 1277.

Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." Burch, 400 F.3d at 680–81; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)). The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record. SSR 16-3p, at *5.

Additional factors an ALJ may consider include the location, duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily activities, work record, or an unexplained failure to pursue or follow treatment—as well as ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's statements and testimony, and other testimony by the claimant that appears less than candid. See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Lingenfelter, 504 F.3d at 1040; Smolen, 80 F.3d at 1284.

Finally, so long as substantial evidence supports the ALJ's assessment of a claimant's subjective complaint, the Court "will not engage in second-guessing." Thomas, 278 F.3d at 959.

the Ninth Circuit. (ECF No. 16 at 14 n.8.)

1        4.       Analysis

2        In this case, there is no dispute that Plaintiff had the severe impairments of depression,

3  learning disorder, intellectual disorder, and ADHD, and that Plaintiff's impairments "could

4  reasonably be expected to cause the alleged symptoms."  (AR 17, 22.)  As a result, the ALJ was

5  required to make a credibility finding as to Plaintiff's testimony.  Valentine, 574 F.3d at 693;

6  Lambert, 980 F.3d at 1277.  Because the ALJ made no finding that Plaintiff was malingering, he

7  was required to give clear and convincing reasons as to why he did not find Plaintiff's subjective

8  contentions about his limitations to be persuasive.  Id.

9        The Court finds the ALJ provided clear and convincing reasons for discounting Plaintiff's

10  symptom allegations, as follows.

11        a.       **Allegations Not Substantiated by the Objective Medical Record**

12        First, the ALJ found the clinical examination findings do not fully corroborate Plaintiff's

13  alleged symptoms and limitations.  (AR 22.)  For example, the ALJ noted Plaintiff's progress

14  over the previous twelve months through January 2021, in which he had no hospitalizations or

15  crisis intervention, no longer experienced hallucinations, denied suicidal ideation, appeared alert

16  and oriented, displayed adequate levels of insight, appropriate speech and thought process, and

17  presented with little difficulties participating in completion of annual assessment.  (Id.)  The ALJ

18  noted that, in May 2019, test results from the Wechsler Adult Intelligence Scale-IV ("WAIS-4")

19  and Plaintiff's valid scores showed a full scale IQ of 65; Plaintiff was assessed as "mildly

20  impaired."  (AR 21.)  The ALJ further noted that, while Plaintiff's test scores under the Wechsler

21  Memory Scale-IV ("WMS-4") test showed marked impairment with immediate memory, they

22  demonstrated only moderate impairment in auditory, visual and delayed memory; and Plaintiff's

23  other Wechsler testing demonstrated only mild impairment with respect to his verbal score and

24  working memory score.  (Id.)

25        Plaintiff takes issue with the ALJ's statement that his subjective testimony is not

26  substantiated by the objective medical evidence.  (ECF No. 15 at 14.)  While a lack of objective

27  medical evidence is a proper factor the ALJ may consider in weighing a claimant's testimony, it

28  cannot form the *sole* basis presented by the ALJ for rejecting pain testimony.  See Vertigan, 260

F.3d at 1049 ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); see also 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").  Rather, where a claimant's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide an additional reason for discounting the testimony.  See Burch, 400 F.3d at 680–81; see also Stobie v. Berryhill, 690 Fed. App'x 910, 911 (9th Cir. 2017) (finding ALJ gave two specific and legitimate clear and convincing reasons for rejecting symptom testimony: (1) insufficient objective medical evidence to establish disability during the insured period and (2) symptom testimony conflicted with the objective medical evidence); cf. Hairston v. Saul, 827 Fed. App'x 772, 773 (9th Cir. 2020) (quoting Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (affirming ALJ's determination claimant's testimony was "not entirely credible" based on contradictions with medical opinion)) ("[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.") and Woods v. Comm'r of Soc. Sec., No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) ("While a *lack* of objective medical evidence may not be the sole basis for rejection of symptom testimony, inconsistency with the medical evidence or medical opinions can be sufficient.") (emphasis in original).

In light of the foregoing authorities, the Court agrees with Plaintiff that a mere lack of corroborating objective medical evidence, alone, would not support an adverse credibility determination.  Here, however, the Court finds the ALJ has provided sufficient additional reasons to discount Plaintiff's testimony.

**b.    Conservative Treatment/Relatively Infrequent Medical Appointments**

The ALJ additionally found Plaintiff's symptom allegations were not as limiting as he generally alleged because the record reflects Plaintiff's "treatment has been sporadic and conservative."  (AR 22.)   Evidence that a claimant's medical treatment was relatively conservative may properly be considered in evaluating a claimant's subjective complaints.  See

1  Tommasetti, 533 F.3d at 1039–40; Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007)

2  ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding

3  severity of an impairment.") (citation omitted).  "Impairments that can be controlled effectively

4  with medication are not disabling for the purpose of determining eligibility for SSI benefits."

5  Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).  Further, "[t]he ALJ

6  is permitted to consider lack of treatment in his credibility determination."  Burch, 400 F.3d at

7  681; see also Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012), superseded by regulation on

8  other grounds (claimant's failure to assert a good reason for not seeking treatment can cast doubt

9  on the sincerity of the claimant's pain testimony, as can a failure to seek psychiatric treatment

10 until after the claimant applies for disability benefits); Stenberg v. Comm'r Soc. Sec. Admin., 303

11 Fed. App'x 550, 552 (9th Cir. 2008) (finding noncompliance with recommended treatments, such

12 as attending only half of scheduled therapies and refusing psychological counseling and

13 continued physical therapy, constituted substantial evidence in support of finding the claimant

14 was not entirely credible).

15        Here, the ALJ notes the medical evidence suggests Plaintiff's symptoms have been

16 relatively well-controlled when he attends treatment and takes his medications as prescribed.

17 (AR 21–22 (citing, e.g., AR 836 (Seroquel helps Plaintiff with sleep); AR 837, 843, 846, 849,

18 854, 892 (medications effective when compliant); AR 838 (Plaintiff reported feeling stable on his

19 treatment plan); AR 840 (medications reportedly effective); AR 900 (Plaintiff reported

20 improvements in daily functioning while taking ADHD medications)).)  During an evaluation

21 with Dr. Ahuja, Plaintiff reported that, although he ran out, the medication helped with hearing

22 voices.  (AR 21 (citing AR 864).)  Plaintiff also endorsed his mood was good, his energy was

23 good, and his motivation was good.  (Id. (citing AR 864).)  Thereafter, the ALJ found the record

24 indicates that, with compliance of medications, Plaintiff's mood continued to improve and he

25 denied hearing voices or experiencing visual hallucinations.  (Id. (citing AR 836–902).)  The ALJ

26 further noted Plaintiff has not required emergent crisis treatment or impatient psychiatric

27 hospitalization, and he has denied hallucinations since approximately March 2019 (a period of

28 two years), further demonstrating Plaintiff's therapy and treatment plan with medications has

1   been sufficient.   (AR 22 (citing AR 864).)   Relatedly, the ALJ found the record reflects

2   "relatively infrequent medical appointments and gaps in the claimant's history of treatment."

3   (Id.)

4        Plaintiff appears to take issue with these findings, arguing the ALJ cherry-picked from Dr.

5   Ahuja's treatment notes, referencing only visits with "good moods" and energy, and a lack of

6   hallucinations, while ignoring evidence in the record that supported Plaintiff's limitations.   (ECF

7   No. 15 at 14–15.)   Alluding generally to his prior summary of the records elsewhere in the

8   briefing, Plaintiff asserts these (unspecified) records "show that Plaintiff's symptoms waxed and

9   waned, and his marked difficulties adapting and managing himself resulted [in] increased

10  symptoms."[12]   (Id. at 15.)   In particular, Plaintiff argues the "gaps in treatment" finding is based

11  on an inaccurate summary of his treatment history because, after his April 2018 appointment,

12  Plaintiff did attend monthly appointments with Dr. Ahuja from May 2018 through October 2018,

13  and he had a December 2018 appointment.   (Id. at 14 (citing AR 869–94).)

14       The Court finds Plaintiff's arguments that the ALJ cherry picked or improperly relied

15  upon this objective medical evidence is unavailing.   The Court acknowledges that an ALJ may

16  not consider only evidence that supports a non-disability determination and disregard evidence

17  that supports a finding of disability.   See, e.g., Garrison, 759 F.3d at 1018; Holohan v. Massanari,

18  246 F.3d 1195, 1207 (9th Cir. 2001).   However, the Ninth Circuit also "do[es] not require ALJs to

19  perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft

20  dissertations when denying benefits."   Lambert, 980 F.3d at 1277; Treichler v. Comm'r of Soc.

21  Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) ("[T]he ALJ's analysis need not be

22  extensive"); see also Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) ("An ALJ need not

23  recite every piece of evidence that contributed to the decision, so long as the record 'permits us to

24

25  [12] While the Court has reviewed Plaintiff's briefing and the administrative record, it is not required to speculate as to
    which pieces of evidence from the administrative record (comprising over a thousand pages of documents), or even
26  statements within the seven pages of Plaintiff's "summary of relevant evidence" (a section comprising nearly half of
    Plaintiff's brief) Plaintiff intends to invoke by his general reference to "the records summarized above" in support of
27  his argument that the ALJ mischaracterized the medical record.   See Greenwood, 28 F.3d at 977 (quoting U.S. v.
    Dunkel, 927 F.2d 955, 956 (9th Cir. 1991)) ("We will not manufacture arguments for an appellant, and a bare
28  assertion does not preserve a claim … As the Seventh Circuit in Dunkel stated aptly: '[j]udges are not like pigs,
    hunting for truffles buried in briefs.' ").

1    glean the rationale of an ALJ's decision.' ").

2        Here, however, a plain reading of the ALJ's decision reveals the ALJ summarized the

3    longitudinal records—including Plaintiff's history of behavioral and learning disorders with

4    special education classes and mental health treatment occurring before Plaintiff turned 18 and

5    years prior to the relevant time period (that is, prior to the filing of the instant application for SSI

6    benefits). (See AR 20.)  The ALJ discusses Plaintiff's complaints during his April 20, 2018 video

7    appointment of audio and visual hallucinations, paranoia, and depression symptoms due to the

8    death of a half-brother, his unkempt appearance, and his slow and quiet speech. (Id. (citing 428,

9    430–31).)  Further, contrary to Plaintiff's contention, the ALJ also discusses many of Plaintiff's

10   treatment appointments with Dr. Ahuja—such as his April 30, 2018 video appointment (AR 438);

11   his August 23, 2019 appointment—in which Dr. Ahuja notes improvement with good moods,

12   good energy, and an overall improvement in psychiatric symptoms, and he denied any

13   hallucinations (AR 845); and his December 2019 appointment, in which Plaintiff reported

14   improvement as 10/10 and "doing good" (AR 836).  (AR 20–21.)  The ALJ also considered

15   Plaintiff's appointments with Turning Point in March and July 2019, and Plaintiff's reported

16   history of hallucinations and complaints he was still experiencing grief, sadness, and being easily

17   distracted (AR 854, 864); and the Family Healthcare Network in 2017, 2018, and 2019, during

18   which time Plaintiff denied mental health symptoms, including feeling down, depressed and

19   hopeless, and denied having little interest or pleasure in doing things.  (AR 21 (citing AR 444,

20   467, 484, 489, 844, 850, 854, 864).)  Thus, the ALJ not only referenced Plaintiff's visits with

21   "good moods," but also considered Plaintiff's reports of other mental health symptoms.  On this

22   record, the Court concludes the ALJ's summary of the record demonstrates he considered

23   Plaintiff's longitudinal medical records in reaching his ultimate determination.  Importantly, the

24   Court notes the ALJ has discussed many of the same records and appointment dates Plaintiff

25   discusses in his medical summary, thus the accusation of "cherry-picking" records appears

26   unwarranted.

27       Furthermore, to the extent Plaintiff argues the ALJ's conclusion based on his review of

28   these records is incorrect, it appears Plaintiff merely seeks to advance an alternative interpretation

1  of the evidence; however, this is not a basis to disturb the ALJ's rational interpretation of the

2  evidence.  Burch, 400 F.3d at 680–81 (citing Magallanes v. Bowen, 881 F.2d 747, 749 (9th Cir.

3  1989)) ("[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one

4  rational interpretation."); Rollins, 261 F.3d at 853 ("It is true that Rollins' testimony was

5  somewhat equivocal about how regularly she was able to keep up with all of these activities, and

6  the ALJ's interpretation of her testimony may not be the only reasonable one.  But it is still a

7  reasonable interpretation and is supported by substantial evidence; thus, it is not our role to

8  second-guess it.").  Here, the ALJ found it noteworthy that Plaintiff reported feeling stable on his

9  treatment plan even despite "situational" stressors at that time—such as being expelled from TAY

10 housing and the CSET program, and breaking up with his girlfriend and being kicked out of her

11 house—and ultimately concluded Plaintiff's mental health status was unremarkable based on

12 these records.  (AR 21–22; see also AR 839 (Plaintiff reportedly "go[es] back and forth" living

13 with his mother and Dr. Ahuja noted Plaintiff "wants to get social security check, hence prefers to

14 be homeless."))  The Court cannot say this interpretation of the medical record is unreasonable.

15 See Chesler, 649 Fed. App'x at 632 (ALJ properly considered that mental symptoms were

16 "situational," "and so unlikely to persist once [the claimant's] circumstances improved," and this

17 constitutes a specific, clear, and convincing reason to reject subjective symptom testimony).

18        Nor can the Court say the ALJ's characterization of Plaintiff's mental health appointments

19 as "relatively infrequent" is unreasonable for purposes of assessing the severity of Plaintiff's

20 impairments and Plaintiff's allegations of entirely debilitating mental health symptoms.  See

21 Munguia v. Astrue, No. C 09-02440 PJH, 2010 WL 760446 (N.D. Cal. Mar. 4, 2010)

22 (unexplained missed appointments and therapy noncompliance resulted in "sparse treatment" that

23 was rightfully considered to cast doubt on validity of claimant's subjective testimony); see also

24 Molina, 674 F.3d at 1113–14 (affirming ALJ's finding that the level or frequency of treatment

25 was inconsistent with the level of complaints, where—as here—there was no medical evidence

26 that the claimant's resistance to treatment was attributable to her mental impairment rather than

27 her own personal preference).

28        Finally, while Plaintiff argues the ALJ failed to consider his "waxing and waning" of

symptoms in the medical notes, the Court notes the ALJ accounted for the treatment notes in which Plaintiff reported more serious symptoms—such as those occurring after Plaintiff "forgot" to refill his prescription medications—by concluding that Plaintiff's medications and treatment were noted to be effective when Plaintiff was in compliance with his treatment plans. The Ninth Circuit has addressed the issue of compliance with medications and treatment plans in mental health disability claims, noting that a claimant's failure to comply with treatment, combined with either a failure to assert a good reason for not seeking treatment, or for proffering a reason deemed unbelievable, can support an adverse credibility determination. See Molina, 674 F.3d at 1113–14. In Molina v. Astrue, for example, the Ninth Circuit affirmed the ALJ's finding that the level or frequency of treatment was inconsistent with the level of complaints where the claimant failed to seek psychiatric treatment until after she applied for disability benefits, and there was no medical evidence that her resistance to treatment was attributable to her mental impairment rather than her own personal preference. Id. In reaching this conclusion, the Ninth Circuit expressly distinguished the Eighth Circuit case Pates-Fires v. Astrue, in which the court made a disability determination because it found the claimant's refusals to keep mental health appointments or take her medication was tied to her mental impairment. Pates-Fires, 564 F.3d 935, 937–38 (8th Cir. 2009) (noncompliance was "tied to mental impairment" where the claimant was involuntarily admitted to mental health institutions on multiple occasions, had a lengthy history of noncompliance with medication, was in "complete denial of illness and judgment was poor," was diagnosed with limited insight, and was given a poor prognosis due to "underlying personality traits"). The instant case is more akin to Molina than Pates-Fires. Here, the ALJ noted Plaintiff had not required emergent crisis treatment or inpatient psychiatric hospitalization (AR 22 (citing AR 776, 780–81)), and the medical records indicate Plaintiff's insight into his psychiatric symptoms was adequate (AR 21 (citing AR 457–64)). To the point of Plaintiff's insight, Dr. Portnoff found no evidence of delusions, formal thought disorder, or bizarre or regressive behavior and thus no evidence Plaintiff has schizophrenia (Id. (citing AR 457–64)); and, at step two of the disability analysis, the ALJ determined Plaintiff has the severe impairments of depression, learning disorder, intellectual disorder and ADHD—not schizophrenia (see AR 17)—

1   and Plaintiff has not challenged this finding by the ALJ (indeed, Plaintiff's appeal appears to

2   focus only on his depressive disorder).  Importantly, Plaintiff provides no evidence or argument

3   that any noncompliance was tied to Plaintiff's mental health condition; to the contrary, the

4   medical record indicates Plaintiff's noncompliance is tied to his own personal preference (see,

5   e.g., AR 838 (Plaintiff reported history of medication noncompliance but declined injectable); AR

6   839 (Dr. Ahuja notes Plaintiff prefers to be homeless because he wants to get social security

7   check); AR 854 (Plaintiff was expelled from TAY housing because of his cannabis use and

8   refusal to attend drug program); AR 851–52 (Plaintiff sought increased dose of Seroquel but

9   declined injectable option for other medications); AR 856 (Plaintiff declined injectables because

10  he doesn't like needles in his body).)  Thus, the Court concludes the ALJ appropriately concluded

11  Plaintiff's medications and treatment were noted to be effective when Plaintiff was in compliance

12  with his treatment plans, Molina, 674 F.3d at 1113–14, and properly considered the conservative

13  and limited nature of Plaintiff's treatment when evaluating the credibility of Plaintiff's symptom

14  allegations.  Tommasetti, 533 F.3d at 1039–40; Warre, 439 F.3d at 1006.

15       At bottom, "[a]s [the Court] cannot say that the ALJ's interpretation of the available

16  evidence was not rational, the ALJ's conclusions were supported by substantial evidence."

17  Shaibi, 883 F.3d at 1108.  Accordingly, the Court will not disturb the ALJ's decision with respect

18  to his interpretation of the medical and non-medical record.

19            c.        Activities of Daily Living

20       In addition, the ALJ identified several ADLs which contradict Plaintiff's claims of totally

21  debilitating symptoms in the instant matter—such as caring for his personal hygiene, playing high

22  school football (previously), living with his girlfriend (as of August 2019 (AR 848)), living with

23  his grandfather (currently), cooking simple meals, playing video games, and shopping for

24  groceries and necessities.  (AR 22–23.)  As noted by the ALJ, these ADLs suggest Plaintiff's

25  symptoms "may not be as limiting as he has generally alleged," and "undermine the reliability of

26  [Plaintiff's] allegations of disabling functional limitations."  (Id.)

27       Plaintiff argues the identified ADLs constitute "only the barest of daily activities," and do

28  not constitute a sufficient reason to discount Plaintiff's testimony because the ALJ does not

1  explain how any of these activities are inconsistent with his alleged limitations or indicative of the

2  ability to work.  (ECF No. 15 at 15.)

3      But the Ninth Circuit has held that "[e]ngaging in daily activities that are incompatible

4  with the severity of symptoms alleged can support an adverse credibility determination."

5  Ghanim, 763 F.3d at 1165.  That is, while the Ninth Circuit generally requires the ALJ to describe

6  the daily activities, note whether the claimant performs them alone or with assistance, and

7  evaluate whether the nature of each activity "comprise[s] a 'substantial' portion of [the

8  claimant's] day, or [is] 'transferrable' to a work environment," it has also held that, even where a

9  claimant's activities "suggest some difficulty functioning, they may [still] be grounds for

10  discrediting the claimant's testimony to the extent that they contradict claims of a totally

11  debilitating impairment."  Molina, 674 F.3d at 1112–13 (citing Turner, 613 F.3d at 1225;

12  Valentine, 574 F.3d at 693).

13      In Valentine v. Commissioner of Social Security Administration, for example, the ALJ

14  determined the claimant "demonstrated better abilities than he acknowledged in his written

15  statements and testimony" and that his "non-work activities … are inconsistent with the degree of

16  impairment he alleges."  Id.    The ALJ further remarked on the claimant's ADLs, but

17  acknowledged these activities did not suggest that the claimant could return to his old job.  Id.

18  Instead, the ALJ indicated she thought the ADLs suggested the claimant's later claims about the

19  severity of his limitations were exaggerated.  Id.  The Ninth Circuit found the ALJ provided clear

20  and convincing reasons to reject the claimant's subjective complaint testimony because she

21  identified evidence that directly contradicted the claimant's contentions about how debilitating his

22  fatigue was.  Id.

23      Similarly, as noted here, the ALJ identified several ADLs which conflict with Plaintiff's

24  allegations of totally debilitating symptoms.  The identified ADLs thus constitute a clear and

25  convincing reason to discount Plaintiff's symptom testimony.  Molina, 674 F.3d at 1112–13;

26  Ghanim, 763 F.3d at 1165; Valentine, 574 F.3d at 693.

27      **d.    Inconsistencies with the Medical Opinion Evidence**

28      Finally, the Court notes the ALJ determined Plaintiff's allegations and contentions

regarding the nature and severity of his impairment-related symptoms and functional limitations were only partially reliable because they were not fully supported by the medical opinions which the ALJ found persuasive.  (See AR 22–24.)  As the Court has noted, a finding that a claimant's symptom allegations are inconsistent with the medical opinions constitutes a clear and convincing reason for rejecting the claimant's subjective testimony.  Hairston, 827 Fed. App'x at 773; Carmickle, 533 F.3d at 1160 Woods, 2022 WL 1524772, at *10 n.4.

Here, the ALJ noted the May 2019 psychological consultative examination with Dr. Portnoff yielded findings that Plaintiff had adequate concentration, persistence and pace; Plaintiff did not display psychomotor abnormalities nor abnormal involuntary movements; his eye contact and facial kinetics were expressive; his stream of mental activity and speech was intact; content of thought was appropriate to the situation; Plaintiff denied hallucinations; his affect was characterized by affability with mild nervousness; his immediate recall was intact, though he had difficulty with delayed recall; he was able to remember autobiographical information; his social judgment was noted as adequate; and his insight into his psychiatric symptoms was noted as adequate.  (AR 21.)  Dr. Portnoff opined Plaintiff is able to perform simple and repetitive tasks with mild to moderate limitations in his ability to perform detailed and complex tasks, mild limitations in the ability to accept instructions from supervisors and interact with coworkers and the public, and mild limitations in the ability to work on a consistent basis without special or additional instruction.  (AR 23.)  The ALJ found Dr. Portnoff's opinion was persuasive as to these limitations.  (AR 23–24.)

The ALJ also found the opinions of Drs. Blase and Collado to be "largely persuasive" with respect to their determination that Plaintiff has moderate limitations in understanding, remembering, and applying information, justifying an additional work limitation of performing simple, routine, repetitive tasks.  (AR 23.)

Importantly, it is clear the medical opinions that Plaintiff's impairments amount to mild to moderate limitations contradicts Plaintiff's allegations of marked and severe limitations in these same functional areas.  Yet Plaintiff has not challenged the ALJ's evaluation of the medical opinion evidence (thereby waiving this particular issue).  Lewis, 236 F.3d at 517 n.13; Indep.

1   Towers of Wash., 350 F.3d at 929.   As such, the ALJ's finding that Plaintiff's symptom

2   allegations are inconsistent with the medical opinions constitutes an additional clear and

3   convincing reason for rejecting the claimant's subjective testimony.  Hairston, 827 Fed. App'x at

4   773; Carmickle, 533 F.3d at 1160; Woods, 2022 WL 1524772, at *10 n.4.

5          In sum, the ALJ has sufficiently identified multiple clear and convincing reasons in

6   support of his determination that Plaintiff's treatment is inconsistent with the severity of his

7   alleged symptoms.  Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014); S.S.R. 16-3p at *10.

8   While Plaintiff has suggested an alternative interpretation of the evidence, this is not sufficient to

9   establish reversible error.  See Ford, 950 F.3d at 1154; Burch, 400 F.3d at 679 (citations omitted).

10  Accordingly, the Court finds the ALJ provided clear and convincing reasons supported by

11  substantial evidence for discounting Plaintiff's symptom testimony.

12         5.     Accounting for Plaintiff's Limitations in the RFC Determination

13         Finally, Plaintiff argues the ALJ failed to account for all of his limitations in the RFC

14  determination.   (ECF No. 15 at 15.)   This argument is premised entirely upon Plaintiff's

15  contention that the ALJ improperly discounted his symptom allegations and proffered limitations.

16  (See id.)  Because the Court has upheld the ALJ's credibility determination, Plaintiff's argument

17  on this basis fails.  See Stubbs-Danielson, 539 F.3d at 1175–76 (rejecting a step five argument

18  that "simply restates" arguments about medical evidence and testimony); see also Embrey v.

19  Bowen, 849 F.2d 418, 423 (9th Cir. 1988) (acknowledging there is no requirement that testimony

20  for which the ALJ has provided specific and legitimate reasons to discount be included in the

21  hypothetical given the VE).

22                                    **VI.**

23                        **CONCLUSION AND ORDER**

24         For the foregoing reasons, IT IS HEREBY ORDERED that:

25         1.     Plaintiff's appeal from the decision of the Commissioner of Social Security (ECF

26                No. 15) is DENIED;

27         2.     Defendant's cross-motion for summary judgment (ECF No. 16) is GRANTED;

28                and

3.   The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Robert Joseph Reedom, and close this case.

IT IS SO ORDERED.

Dated:   __**December 2, 2022**__

_____
UNITED STATES MAGISTRATE JUDGE